UNITED STATES FIDELITY AND GUARANTY CO., Fidelity and Guaranty Insurance Underwriters, Inc. and Fidelity and Guaranty Insurance Co., Plaintiffs,

v.

FROSTY BITES, INC., Frosty Bites Distribution, L.L.C. and Frosty Bites Distributors of Georgia, Inc., Defendants.

No. 02 CIV. 1682(WCC).

United States District Court, S.D. New York.

Nov. 1, 2002.

---

Kenney, Kanaley, Shelton & Liptak, LLP, Attorneys for Plaintiffs, Buffalo, Judith Treger Shelton, Esq., Sharon Angelino, Esq., Of Counsel.

Pino & Associates, LLP, White Plains, Joanna Roberto, Esq., Of Counsel, Law Office of Robert G. Oake, Jr., Allen, TX, Robert G. Oake, Jr., Esq., Of Counsel, Law Office of Rudolf O. Siegesmund, Dallas, TX, Rudolf O. Siegesmund, Esq., Of Counsel, Attorneys for Defendant Frost Bites, Inc.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs United States Fidelity and Guaranty Company ("USF & G") and others[1] bring this action against defendant Frosty Bites, Inc. ("FBI") for a declaratory judgment that USF & G has no duty to defend or indemnify FBI against patent infringement claims asserted against it in an action pending in the United States District Court for the Northern District of Georgia.[2] USF & G now brings this motion for partial summary judgment pursuant to FED. R. CIV. P. 56 determining that it has no duty to defend or indemnify FBI against these claims. For the reasons stated below, the motion is granted.

## BACKGROUND

USF & G issued a commercial general liability insurance policy[3] to FBI effective March 3, 2000 to March 3, 2001. (Pls. Rule 56.1 Stmt.¶ 1.) In the original complaint, Dippin' Dots, Inc. ("Dippin' Dots") and Curt D. Jones sued a number of related defendants (not including FBI) for patent infringement in the manufacture of free-flowing beaded ice cream employing the patented method and for trademark infringement. (Pls. Mem. Supp. Partial Summ. J., Ex. A.) The second amended complaint in that action added FBI as a defendant with a group of Frosty Bites entities charging them only on the patent infringement claim. FBI tendered the

---

1. Fidelity and Guaranty Insurance Underwriters, Inc. and Fidelity and Guaranty Insurance Co.

2. *Dippin' Dots, Inc. and Curt D. Jones v. Thomas R. Mosey, Nicholas Angus, Dots of Fun, Dots of Fun, Ltd., International Laser Expressions ("ILE"), et al.,* Civil Action No. 3:96–CV–1959–X.

3. Policy No. BFS00000576041.

second amended complaint of the underlying action to USF & G for defense and indemnification[4]. USF & G disclaimed coverage. (Pls. Mem. Supp. Partial Summ. J., Ex. I.)

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 254 (E.D.N.Y. 1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali,* 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Pruden-*

*tial Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994).

### II. *Duty to Defend Patent Infringement Claim*

■ Under New York law, the court determines the proper construction of an insurance contract, as with other contracts, as a matter of law. *Checkrite Ltd., Inc. v. Ill. Nat'l Ins. Co.,* 95 F.Supp.2d 180, 188 (S.D.N.Y.2000). If terms in a contract are not defined, they are given the meaning ordinarily understood by laypersons. *J.A. Brundage Plumbing & Roto–Rooter, Inc., v. The Mass. Bay Ins. Co.,* 818 F.Supp. 553, 556 (W.D.N.Y.1993). If the ambiguity is still unresolved, the language is construed against the insurer. *Id.*

An insurer's duty to defend is broader than its duty to indemnify, and is determined by comparing the allegations of the complaint to the policy language. *Energex Sys. Corp. v. Fireman's Fund Ins. Co.,* No. 96 Civ. 5993, 1997 WL 358007, at *1 (S.D.N.Y. June 25, 1997); *J.A. Brundage Plumbing & Roto–Rooter,* 818 F.Supp. at 556. The insurer must defend if the facts alleged raise a reasonable possibility that the action will be within the policy coverage. *A. Meyers & Sons Corp. v. Zurich Am. Ins. Group,* 74 N.Y.2d 298, 303, 546 N.Y.S.2d 818, 545 N.E.2d 1206 (1989). If there is no such possibility, the duty to defend is not triggered. *Id.*

■ New York courts are clear in holding that a general insurance policy does not cover patent infringement and therefore the duty of the insurer to defend the insured is not triggered. *Energex Sys. Corp.,* 1997 WL 358007, at *2; *Fantasia Accessories, Ltd. v. N. Assurance Co. of Am.,* No. 01 Civ. 0663, 2001 WL 1478807, at *4 (S.D.N.Y. Nov. 20, 2001); *A. Meyers & Sons Corp.,* 74 N.Y.2d at 303–04, 546

---

4. The date of tender is in dispute but is not relevant for this motion.

N.Y.S.2d 818, 545 N.E.2d 1206. Indeed, the general trend of courts throughout the United States is to deny coverage to insureds seeking to recover from their insurers for patent infringement. *Am. Century Servs. Corp. v. Am. Int'l Specialty Lines Ins. Co.*, No. 01 Civ. 8847, 2002 WL 1879947, at *3 (S.D.N.Y. Aug. 14, 2002).

Unlike this action, where the insured presented no argument addressing how patent infringement claims triggered the duty to defend, arguments in support of coverage in other actions rely on the advertising injury section of the commercial general policy. *Energex Sys. Corp.*, 1997 WL 358007, at *2; *Fantasia Accessories*, 2001 WL 1478807, at *3; *A. Meyers & Sons Corp.*, 74 N.Y.2d at 303, 546 N.Y.S.2d 818, 545 N.E.2d 1206. Plaintiffs seek to address such argument by alleging that patent infringement is not covered under the policy issued to defendant as it does not fall within the advertising section of the policy.

The policy issued to FBI is a commercial general liability insurance policy. (Pls. Rule 56.1 Stmt. ¶ 1.) The relevant portions of the policy cover "advertisement injury committed in the course of advertising your goods, products, or services that: a) was first committed in the 'coverage territory'; and b) was committed in whole or part during the policy period." The insurance policy issued to FBI defines injury as:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title, or slogan.

(Pls. Mem. Supp. Partial Summ. J., Ex.G.)

In order for a claim to be covered under the advertising section, the offense must fall into one of the listed definitions and it must be committed in the course of advertising. *See Fantasia Accessories*, 2001 WL 1478807, at *3; *A. Meyers & Sons Corp.*, 74 N.Y.2d at 303, 546 N.Y.S.2d 818, 545 N.E.2d 1206. We turn now to the first issue, whether patent infringement falls under the listed definitions of advertisement injury contained in the insurance policy. Arguments in support of this approach focus on paragraphs (c) and (d), attempting either to manipulate the language to encompass patent infringement or to establish that the language is ambiguous and should be construed against the insurer. *See Fantasia Accessories*, 2001 WL 1478807, at *3; *Lumbermens Mutual Cas. Co. v. Dillon Co. Inc.*, No. 3:98–CV–2013, 2000 WL 1336498, at *5 (D.Conn. Aug. 31, 2000).

A Connecticut appellate court, applying Connecticut law that is substantially identical to New York law in this area, discussed a similar patent infringement claim with similar insurance policy language. *See Julian v. Liberty Mutual Ins. Co.*, 43 Conn.App. 281, 682 A.2d 611, 615 (1996). There, the court quickly disposed of an argument that patent infringement was included within the "infringement of title" section of the advertising injury. *Id.* The court held that there was "no ambiguity in the phrase infringement of title in the context of the other policy provisions defining advertising injury" because the specific terms that were listed in the advertising injury definition were "connected to well known legal categories, just as a claim of patent infringement is a distinct legal claim." *Id.* at 615. The court went on to

note that if patent infringement were meant to be covered under this section, the word "patent" would appear and any other reading would be "nonsense." *Id.* at 613–14. This line of reasoning was reiterated by a Connecticut district court, finding that commercial general liability policies do not encompass patent infringement and that the "omission of the offense of patent infringement reflects the parties' clear intent that allegations of that offense are not covered by the policy." *Lumbermens Mutual Cas.*, 2000 WL 1336498, at *5.

In other cases, insureds have tried to fit patent infringement under the "advertising idea" or "style of doing business" definition of advertising injury without success. For example, in *Fantasia Accessories*, the court reasoned that the phrase "advertising idea" relates to the manner in which one advertises its goods, which is separate from the goods themselves. 2001 WL 1478807, at *5. Patent infringement therefore would fall outside the scope of advertising idea. The court similarly found that "style of doing business" is understood by a lay person to mean the "manner or method in which a company operates," thereby precluding the product itself from being encompassed within that meaning. *Id.* at *6. Thus, a patent, which relates to the product itself or the method of making it, would not fall into the phrases "advertising idea" or "style of doing business" and could not fall within the definition of advertising injury. *Id.* at *5.

For this reason, the second step of the analysis, determining whether the patent infringement occurred during the course of advertising, is not necessary. *See id.* at *7 (stating that because there was no advertising injury, there was no contractual duty to defend or indemnify and, therefore, no need to reach the question of whether any patent infringement occurred in the course of advertising).

### III. *Duty to Defend Patent Infringement Based on Covered Claims*

As noted above, the second amended complaint grouped FBI with a number of defendants, collectively referred to as "Frosty Bites Distribution," who are sued only for patent infringement. It also grouped another set of defendants, Thomas R. Mosey, Nicolas Angus ("Angus"), Dots of Fun, Dots of Fun, Ltd., and ILE (collectively referred to as the "Mosey defendants"), who are sued for both patent and trademark infringement. Angus is or was Vice President of Dots of Fun and ILE, as well as owner, managing director and controller of Dots of Fun, Ltd. and FBI. (Pls. Mem. Supp. Partial Summ. J., Ex. A.) Angus is named individually with no indication of the capacity in which he is being sued.

Dippin' Dots is the owner of the following trademarks: "Dippin Dots," "Ice Cream of the Future" and "Dippin' Dots and Ice Cream of the Future" with design. The underlying complaint alleges that the Mosey defendants violated Dippin' Dots' trademark by using the following marks in connection with the sale of a competing free-flowing beaded ice cream: "Dots of Fun," "Ice cream of the future," "Tomorrow's ice cream…today" and the "Dots of Fun" mark with design.

FBI argues that even if patent infringement is not covered under USF & G's policy, there is still a duty to defend the patent infringement claim based on the trademark infringement claim. The defendant's logic is as follows: the president of FBI, Angus, is named in the underlying complaint as a Mosey defendant, and is being sued for both patent and trademark infringement. FBI contends that FBI is responsible for the actions of its president, through *respondeat superior*, and is therefore being sued for trademark infringe-

ment as well. According to defendant, under New York law, trademark infringement is covered under the advertising injury section of the policy, and if one claim is covered under the policy, the duty to defend extends to all claims, whether they are covered or not. Thus, USF & G has the duty to defend the patent infringement claim against FBI based on the trademark infringement claim asserted against Angus.

In addition, FBI argues that when a complaint lacks sufficient factual definiteness to place the claim clearly within or without the policy coverage, the insurer must defend if there is a possibility that the claim is within the policy coverage. *Lapierre, Litchfield & Part. v. Continental Cas. Co.*, 59 Misc.2d 20, 297 N.Y.S.2d 976, 980 (1969). Following that reasoning, FBI submits that if it is unclear whether Angus is being sued in his capacity as president of FBI, USF & G must defend because there is a potential claim of trademark infringement against FBI. We disagree.

Angus is not sued in his capacity as president of FBI. Angus and FBI are designated defendants in completely separate groups with FBI clearly being sued only for patent infringement and the Mosey defendants clearly being sued for both trademark infringement and patent infringement. The Mosey defendants are sued for trademark infringement on the basis of their allegedly infringing marks. FBI has apparently never used any of those marks or any other mark which could be plausibly charged with confusing similarity to the marks of Dippin' Dots. Moreover, nowhere in the second amended complaint does it state Angus is being sued in his capacity as president of FBI; nor are there any allegations that the unlawful actions allegedly taken by Angus were done on behalf or in furtherance of the business of FBI. Thus, the second amend-

ed complaint is clearly insufficient to support a claim that FBI infringed Dippin' Dots' trademark. *Kirkpatrick v. Rays Group*, 71 F.Supp.2d 204, 215 (W.D.N.Y. 1999).

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment is granted. The Clerk of the Court will enter a declaratory judgment under FED. R. CIV. P. 54(b) and 56 declaring that United States Fidelity & Guaranty Company, Fidelity and Guaranty Insurance Underwriters, Inc. and Fidelity and Guaranty Insurance Co. have no duty to defend or indemnify Frosty Bites, Inc. against the claim for patent infringement brought against it by Dippin' Dots, Inc. and Curt D. Jones in the United States District Court for the Northern District of Georgia.

SO ORDERED.