**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Plaintiff,

v.

**FROSTY BITES, INC., Defendant.**

**Frosty Bites, Inc. and Nicholas Angus, Counter–Plaintiffs,**

v.

**United States Fidelity and Guaranty Company, Counter–Defendant.**

No. 02 Civ. 1682(WCC).

United States District Court, S.D. New York.

July 16, 2004.

Kenney, Shelton, Liptak & Nowak, LLP, Buffalo, NY, Judith Treger Shelton, Sharon Angelino, Of Counsel, Attorneys for Plaintiff/Counter–Defendant.

Pino & Associates, LLP, White Plains, NY, Joanna Roberto, Of Counsel, Attorneys for Defendant/Counter–Plaintiff Frosty Bites, Inc. and Counter–Plaintiff Nicholas Angus.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

In this latest chapter of the *Frosty Bites* case, an insurance coverage dispute that threatens to forever quell this Court's appetite for frozen desserts, plaintiff United States Fidelity and Guaranty Company ("USF & G") seeks a judgment declaring that it has no duty to defend or indemnify defendant and counter-plaintiff Nicholas Angus ("Angus") against various intellectual property claims asserted against him in an action now pending in the United States District Court for the Northern District of Georgia (the "underlying action").[1] USF & G also seeks declarations

---

1. *Dippin' Dots, Inc. and Curt D. Jones v. Thomas R. Mosey, Nicholas Angus, Dots of Fun, Dots of Fun, Ltd., Int'l Laser Expressions ("ILE"), et al.,* Civ. A. No. 3:96–CV–1959–X (N.D.Ga.). The underlying action was com-menced in the United States District Court for the Northern District of Texas, and was transferred to the Northern District of Georgia pursuant to an order issued by the Judicial Panel on Multidistrict Litigation consolidating

stating that: (1) it is entitled to rescind the insurance contract based on defendants', including Angus's, material misrepresentations and failure to disclose material facts; and (2) coverage has been vitiated because defendants, including Angus, failed to provide timely notice of claim as required by the insurance policy (collectively the "contract defenses"). Angus has intervened and brought as counter-plaintiff a breach of contract action for attorney's fees and costs incurred in both the present case and the underlying action as a result of USF & G's failure to defend him. Both USF & G and Angus now move for summary judgment pursuant to FED. R. CIV. P. 56 on the duty-to-defend issue. Angus also moves for summary judgment dismissing USF & G's contract defenses. For the reasons set forth herein, we grant Angus's motion for partial summary judgment declaring that USF & G is required to defend it in the underlying action and deny as moot USF & G's motion for partial summary judgment. We deny without prejudice Angus's motion for partial summary judgment dismissing USF & G's contract defenses.

## BACKGROUND

Unless otherwise noted, the following facts and procedural history are undisputed. Frosty Bites, Inc. ("FBI") is a business that was incorporated on January 11, 2000, to manufacture a cryogenically frozen ice cream product consisting of a free-flowing mixture of beads and irregularly shaped particles. (Angus Rule 56.1 Stmt. ¶ 4.) Angus was president and chief executive officer of FBI from January 11, 2000 until approximately February 26, 2003. (Id. ¶¶ 5-6.) USF & G issued to FBI a commercial general liability insurance policy, No. BFS00000576041 (the "Policy"), effective from March 3, 2000 until March 3,

2001. (Id. ¶ 8.) The Policy also covered FBI's "executive officers" and directors, and provided in relevant part that: "Your 'executive officers' and directors are insureds, *but only with respect to their duties as your officers or directors.* Your stockholders are also insureds, but only with respect to their liability as shareholders." (Pl. Rule 56.1 Stmt. ¶ 4 (emphasis added).) It is uncontested that Angus, as FBI's president during the term of the Policy, qualifies as a covered director or officer. (Angus Rule 56.1 Stmt. ¶¶ 11-12.)

The underlying action was brought by Dippin' Dots, Inc. ("Dippin' Dots") and Curt D. Jones against numerous individual and corporate defendants, including Angus and FBI, for patent and trademark violations in the manufacture and sale of free-flowing beaded ice cream. (2d Am. Complt. ¶¶ 1-6, provided as Angelino Aff., Ex. A.) In the second amended complaint in the underlying action (the "underlying complaint"), Dippin' Dots included Angus with a group of defendants referred to as the "Mosey defendants" and also described him individually as the "Vice President of Dots of Fun and International Laser Expressions, Inc., managing director, owner and controller of Dots of Fun, Ltd., and President of Frosty Bites, Inc." (Id. ¶ 4.) Dippin' Dots alleged that the Mosey defendants committed patent infringement, trademark infringement, false designation of origin, and violations of relevant state common and statutory law. (Id. ¶¶ 17-50.) FBI was, however, accused only of patent infringement. (Id. ¶¶ 25-30.) The allegedly infringing products were marketed and sold starting in April 1996; the pleading alleges no concluding date. (Id. ¶ 12.) FBI tendered the underlying complaint to USF & G for defense and indemnification.[2] In May 2001, USF & G sent to FBI a

it for discovery with related cases as MDL 1377. (Decl. J. Complt. ¶¶ 27-28; 2d Am. Answer ¶ 21.)

**2.** We note that the exact date of tender and notification of claims is in dispute, but is not relevant for our disposition of this motion.

letter disclaiming coverage and denying any duty to defend or indemnify both FBI and Angus. (Angelino Aff., Ex. J.)

In June 2001, USF & G brought this declaratory judgment action against FBI in New York Supreme Court, Westchester County, seeking a declaratory judgment stating that: (1) USF & G is entitled to rescission of the insurance policy based on material misrepresentations and failure to disclose facts material to USF & G's assessment of the underwriting risk; (2) coverage has been vitiated by FBI's failure to provide USF & G with timely notice of the claims against it; and (3) USF & G is not obligated to defend or indemnify FBI in the underlying action. Thereafter, the parties stipulated to the discontinuance of the action with prejudice as to other Frosty Bites entities that USF & G had named as defendants (Angelino Aff., Ex. E),[3] and FBI removed the declaratory judgment action to this Court in March 2002. (Angelino Aff., Ex. F.)

Subsequently, USF & G moved for partial summary judgment and on November 1, 2002, this Court entered an Opinion and Order (hereinafter "*Frosty Bites I* "),[4] subsequently summarily affirmed by the Second Circuit, declaring that USF & G has no duty to defend or indemnify FBI against the patent infringement claim because: (1) it was not covered by the general insurance policy as an "advertisement injury"; and (2) there was no duty to defend or indemnify FBI arising out of the other claims because those claims were not asserted against FBI. *U.S. Fid. & Guar. Co. v. Frosty Bites, Inc.*, 232 F.Supp.2d 101, 106 (S.D.N.Y.2002) (Conner, J.), *aff'd without opinion*, 80 Fed.Appx. 152 (2d Cir.

2003). While that motion was pending before this Court, Angus intervened in the declaratory judgment action and also asserted a counterclaim alleging that USF & G had breached the insurance contract by declining its duty to defend or indemnify him and FBI in the underlying action. (Angelino Aff., Ex. G.) Thereafter, USF & G and Angus filed the motions for summary judgment that are presently before this Court.

## DISCUSSION

### I. *Standard of Review*

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is

---

3. USF & G also had named as defendants Frosty Bites Distribution, L.L.C. and Frosty Bites Distributors of Georgia, Inc., and had sought similar relief with respect to them.

4. After this Court issued *Frosty Bites I*, FBI moved for reconsideration and this Court granted that motion, but ultimately adhered to its original ruling. *U.S. Fid. & Guar. Co. v. Frosty Bites, Inc.*, 235 F.Supp.2d 295, 298 (S.D.N.Y.2002) (Conner, J.).

not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994).

## II. *Coverage Issue*

USF & G contends that it has no duty under the Policy to defend Angus because: (1) he is described in the underlying complaint as a "Mosey" defendant and not as a "Frosty Bites Distribution" defendant; (2) the factual allegations in the underlying complaint refer to activities that FBI could not have participated in and therefore do not relate to Angus's FBI responsibilities; and (3) this Court's prior rulings reflect the fact that Angus was not sued in his capacity as president of FBI. (Pl. Mem. Supp. Summ. J. at 4–10.) Angus argues in response that this Court's prior rulings are not preclusive because it does not matter whether he was sued in his official or individual capacity as the allegations pled against him arose in connection with his FBI duties. (Angus Mem. Opp. Summ. J. at 2–5.)

 The basic principles governing an insurer's duty under New York law to defend its insureds are not in dispute. The duty to defend "is distinct from, and far broader than, [the] duty to indemnify." *Atl. Mut. Ins. Co. v. Terk Tech. Corp.*, 309 A.D.2d 22, 29, 763 N.Y.S.2d 56 (1st Dep't 2003). "It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or

not covered." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 62, 575 N.E.2d 90, 571 N.Y.S.2d 672 (1991). Thus, "an insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage." *Id.* at 65, 571 N.Y.S.2d 672, 575 N.E.2d 90. Although "an insurer's duty to defend is called into play whenever the pleadings allege an act or omission within the policy's coverage," the duty to defend is not circumscribed solely by the allegations in the complaint against the insured. *Id.* at 65–66, 571 N.Y.S.2d 672, 575 N.E.2d 90. Thus, "the duty to defend exists '[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased.'" *Id.* at 66, 571 N.Y.S.2d 672, 575 N.E.2d 90 (quoting *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73, 542 N.E.2d 1048, 544 N.Y.S.2d 531 (1989)). A court making this determination should "liberally construe[ ]" the pleading at issue. *See, e.g., Conrad R. Sump & Co. v. Home Ins. Co.*, 267 A.D.2d 415, 417, 701 N.Y.S.2d 103 (2d Dep't 1999).

 Indeed, in *Fitzpatrick*, the New York Court of Appeals declined to endorse a "wooden application of the 'four corners of the complaint' rule [that] would render the duty to defend narrower than the duty to indemnify" and held that "the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." [5] 78 N.Y.2d at 67, 571

---

**5.** In *Fitzpatrick*, a widow had brought a wrongful death suit against the owner of the all-terrain vehicle that her husband was operating when he died. 78 N.Y.2d at 63, 571 N.Y.S.2d 672, 575 N.E.2d 90. The complaint alleged that the vehicle was owned by an individual named Frank Moramarco, who was an officer, director and shareholder in the landscaping company that had hired the

decent as an "independent contractor." *Id.* Moramarco had purchased the vehicle on behalf of the business for use in its landscaping work, and the business had purchased a liability insurance policy that "indemnified the corporation against having to pay damages for bodily injury and property damage arising out of its business." *Id.* at 63–64, 571

N.Y.S.2d 672, 575 N.E.2d 90; see also id. at 63, 571 N.Y.S.2d 672, 575 N.E.2d 90 (holding that "the insurer cannot use a third party's pleadings as a shield to avoid its contractual duty to defend its insured"). In *Fitzpatrick*, "[t]he court ... held that despite the certainty provided by the four corners rule, the duty to defend derives from the insurer's contract with the insured, not from the complaint.... Measuring the duty to defend by the complaint's allegations alone undermines that principle, even though it may provide the insurer the comfort of certainty (not to mention an escape from responsibility under the policy)." *Employers Ins. of Wausau v. Duplan Corp.*, 899 F.Supp. 1112, 1124 (S.D.N.Y.1995) (discussing *Fitzpatrick*). Nevertheless, "the court should not impose a duty to defend on an insurer 'through a strained, implausible reading of

the complaint that is linguistically conceivable but tortured and unreasonable.'" *Atl. Mut. Ins.*, 309 A.D.2d at 30, 763 N.Y.S.2d 56 (quoting *State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1428 (2d Cir.1991)).

■■■ We conclude that Angus is covered by the Policy for those claims asserted against him in the underlying action.[6] Given the broad nature of the duty to defend, we cannot say that the underlying complaint does not contain anywhere within its four corners "'any facts or allegations which bring the claim even potentially within the protection purchased.'" *Fitzpatrick*, 78 N.Y.2d at 66, 571 N.Y.S.2d 672, 575 N.E.2d 90 (quoting *Technicon Elecs.*, 74 N.Y.2d at 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048). Moreover, it is axiomatic that "[a] party's characterization of the causes of action alleged in a complaint

N.Y.S.2d 672, 575 N.E.2d 90. The insurance policy "was not an 'owner's policy' and Moramarco was not a specifically named insured," but it included "as 'insured persons' 'any executive officer, director or stockholder ... while acting within the scope of his duties as such.'" *Id.* at 64, 571 N.Y.S.2d 672, 575 N.E.2d 90. The insurance company, however, claimed that it was not obligated to defend Moramarco because "the complaint did not name [the business], and Moramarco, the named defendant, was not insured as an individual." *Id.* The insurance company declined to reconsider its coverage decision even after Moramarco explained via letter that "the vehicle involved in the Fitzpatrick accident was 'owned for and ... used exclusively for landscaping operations' and that the claims asserted against him in the main action all arose out of activities he undertook for ... the named insured" and those "same circumstances were brought to the insurer's attention in a letter from its own agent in which the company was urged to reconsider its prior decision." *Id.* The New York Court of Appeals held that the insurer could not ignore the existence of facts beyond those alleged in the pleading against the insured, and was obligated to defend Moramarco in the underlying wrongful death action. *Id.* at 70, 571 N.Y.S.2d 672, 575 N.E.2d 90.

6. Trade dress and trademark infringement committed during the course of marketing and advertising are considered "advertising injuries" under New York law. *See, e.g., Century 21, Inc. v. Diamond State Ins. Co.*, No. 03 Civ. 5163, 2004 WL 1117897, at *1 (S.D.N.Y. May 18, 2004); *Allou Health & Beauty Care, Inc. v. Aetna Cas. & Sur. Co.*, 269 A.D.2d 478, 479–80, 703 N.Y.S.2d 253 (2d Dep't 2000). Thus, the claims against Angus are within the scope of the Policy because the underlying complaint alleged the occurrence of numerous such violations in the advertising and marketing of the allegedly infringing product. (2d Am.Complt. ¶¶ 14–15, 35, 40–42.) It is well settled that an insurer who is obligated to defend or indemnify an insured "for at least some of the causes of action asserted in the underlying complaint ... must defend the insured on all of the causes of action asserted therein." *Am. Mfrs. Mut. Ins. Co. v. Quality King Distribs., Inc.*, 287 A.D.2d 527, 529, 731 N.Y.S.2d 234 (2d Dep't 2001). Thus, because USF & G must defend Angus on the trademark and trade dress claims, it must also defend him on the otherwise uncovered patent infringement claims. *See, e.g., Frosty Bites I*, 232 F.Supp.2d at 103–04.

are not controlling." *Curtis v. Nutmeg Ins. Co.*, 204 A.D.2d 833, 834, 612 N.Y.S.2d 256 (3d Dep't 1994), *leave to appeal dismissed*, 84 N.Y.2d 1027, 647 N.E.2d 454, 623 N.Y.S.2d 182 (1995). Thus, we are unable to conclude that the pleading clearly names Angus *only* in his individual capacity and does not refer to actions that are outside the scope of his covered duties as an FBI officer.[7] Although Angus is grouped with the Mosey defendants in the pleading's caption, it is explicitly stated in the party descriptions that he is the president of FBI, in addition to his past employment with the corporations that are also named as Mosey defendants. (2d Am. Complt. ¶ 4.) Moreover, as Angus points out, in contrast to the description of the product sold by Mosey directly or through intermediaries in Texas beginning in 1996, namely a "beaded free-flowing ice cream product," the trade dress allegations against the Mosey defendants in the underlying complaint refer to the sale of ice cream with "beads or pieces," which accurately describes the appearance of FBI's product produced in Florida. (Angus Mem. Opp. Summ. J. at 4–5; Angus Reply Mem. Supp. Summ. J. at 6–8; 2d Am. Complt. ¶¶ 12, 42.) We therefore are hesitant to deny a party coverage for his defense based solely on the allocation and formatting of the allegations in the underlying complaint, which can in any event be amended freely under the Federal Rules of Civil Procedure.[8] *See, e.g.*, FED. R. CIV. P. 15(a) (noting that leave to amend "shall be freely given when justice so requires"); *see also Fitzpatrick*, 78 N.Y.2d at 68, 571 N.Y.S.2d 672, 575 N.E.2d 90 ("Further, an insured's right to a defense should not depend solely on the allegations a third party chooses to put in the complaint. This is particularly so because the drafter of the pleading may be unaware of the true underlying facts or the nuances that may affect the defendant's coverage and it might not be in the insured's (or the insurer's) interest to reveal them.").

■ USF & G argues that this Court's Opinion and Order in *Frosty Bites I* concluding that it is not obligated to defend

---

7. Presumably in light of *Fitzpatrick's* expansive holding, Angus also offers a Declaration as extrinsic evidence in support of his position that he was acting within the scope of his position with FBI at all relevant times. He states:

> The Second Amended Complaint alleges trade mark, trade dress and patent infringement allegations against me that are based on actions taken by me while I was president of Frosty Bites, Inc. At all times while I performed the actions that are the basis of the trade mark, trade dress and patent infringement allegations against me I was acting within the scope of my employment at Frosty Bites, Inc. At no time did I perform any such actions in a purely private capacity, separate and apart from my position at Frosty Bites, Inc.

(Angus Decl. ¶ 5.) Our decision does not rely on this portion of Angus's Declaration because it is conclusory and self-serving. *See, e.g., Davis v. State of New York*, 316 F.3d 93, 100 (2d Cir.2002).

8. Indeed, the memoranda of both USF & G and Angus are replete with inherently speculative discussions of the intentions of Dippin' Dots and its attorneys in drafting and amending the allegations with respect to Angus that form the underlying complaint. (Angus Mem. Opp. Summ. J. at 4–5; Pl. Mem. Supp. Summ. J. at 5–6.) Inasmuch as the duty to defend has been described by the New York state and federal courts as " 'exceedingly broad,' " *Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir.2002) (quoting *Cont. Cas. Co. v. Rapid–Am. Corp.*, 80 N.Y.2d 640, 648, 609 N.E.2d 506, 593 N.Y.S.2d 966 (1993)), the ambiguity in the liberally construed underlying complaint with respect to Angus obliges us to conclude that USF & G has a duty to defend him. *Cf. Fitzpatrick*, 78 N.Y.2d at 68 n. 3, 571 N.Y.S.2d 672, 575 N.E.2d 90 ("Certainly, it is unlikely that a plaintiff would voluntarily choose an uncovered theory of liability over one that is supported by the facts and could lead to a judgment that is covered by insurance.").

FBI precludes coverage for Angus as well. (Pl. Mem. Supp. Summ. J. at 10–11.) USF & G relies specifically on the section of *Frosty Bites I* concluding that it was not obligated to defend FBI because covered claims had not been asserted against Angus, FBI's president, for which it might be held liable under the doctrine of *respondeat superior*:

> Angus is not sued in his capacity as president of FBI. Angus and FBI are designated defendants in completely separate groups with FBI clearly being sued only for patent infringement and the Mosey defendants clearly being sued for both trademark infringement and patent infringement. The Mosey defendants are sued for trademark infringement on the basis of their allegedly infringing marks. FBI has apparently never used any of those marks or any other mark which could be plausibly charged with confusing similarity to the marks of Dippin' Dots. Moreover, nowhere in the second amended complaint does it state Angus is being sued in his capacity as president of FBI; nor are there any allegations that the unlawful actions allegedly taken by Angus were done on behalf or in furtherance of the business of FBI. Thus, the second amended complaint is clearly insufficient

to support a claim that FBI infringed Dippin' Dots' trademark.

*Frosty Bites I*, 232 F.Supp.2d at 106. In response, Angus argues that this section is not outcome-determinative here because under the New York Court of Appeals's decision in *Fitzpatrick*, whether USF & G is obligated to defend him does not necessarily depend on his legal capacity as stated in the underlying complaint because the facts in that pleading nevertheless indicate the potential for liability arising out of his FBI duties.[9] (Angus Mem. Supp. Summ. J. at 5–7; Angus Mem. Opp. Summ. J. at 2–3.) We agree with Angus. In *Frosty Bites I*, the reliance of Angus's counsel on *Fitzpatrick* was minimal as compared to their extensive discussion of that case in connection with the present motion. Our attention having properly been drawn to the import of that significant decision of New York's highest state court, we conclude that the broad reach of *Fitzpatrick*, see *supra* note 5 and accompanying text, demands our liberal construction of the underlying complaint, and that USF & G is, therefore, obligated to defend Angus pursuant to the Policy.

### III. *USF & G's Contract Defenses*

Angus next contends that USF & G's contract defenses to coverage based on

---

9. USF & G's reliance on *AIU Ins. Co. v. Am. Motorists Ins. Co.*, 292 A.D.2d 277, 740 N.Y.S.2d 296 (1st Dep't 2002), in support of the proposition that the mere identification of Angus in the underlying complaint as FBI president does not entitle him to coverage under the Policy, is misplaced. (Pl. Mem. Supp. Summ. J. at 10.) In *AIU*, the court ruled that an electrical subcontractor's insurance company was not obligated to defend or indemnify a hotel and its general contractor when the injured party in the underlying action was not the electrical subcontractor's employee, although there were indications that the electrical contractor may have failed to clean up the debris that caused the accident at issue. 292 A.D.2d at 278, 740 N.Y.S.2d 296. The court relied on terms and conditions in the electrical subcontractor's insurance policy "limiting liability coverage for additional insureds [including the hotel and general contractor] to claims specifically 'arising out of' work performed for the additionally insured party." *Id.* The court concluded that because the injured employee was not an employee of the electric subcontractor, his injury did not "arise out of" work performed by it for the general contractor and hotel. *Id.* at 279, 740 N.Y.S.2d 296. This case is inapposite because we already have concluded that the underlying complaint is ambiguous as to which entity that Angus was working for at the time he committed the allegedly infringing actions. We therefore cannot declare that USF & G is not obligated to defend Angus under the Policy.

material misrepresentations and late notice of claim should be dismissed because: (1) USF & G has proffered no evidence in support of these coverage defenses; and (2) Angus has proffered evidence that Angus never made any false statements in connection with FBI's application to induce the issuance of the Policy.[10] USF & G argues in response that it is premature for this Court to address this issue because discovery has not yet concluded and the record does not even contain FBI's insurance application, let alone various depositions of parties including Angus and the insurance agent who placed the coverage that it needs to prove the contract defenses. (Pl. Mem. Opp. Summ. J. at 5–6.) In response to Angus's suggestion (Angus Reply Mem. Supp. Summ. J. at 9–10), USF & G has requested a continuance pursuant to Fed. R. Civ. P. 56(f) by providing an appropriate affidavit to accompany its Surreply Brief.[11] (Pl. Surreply Mem. Opp. Summ. J. at 5.) Having reviewed the submissions, we grant the continuance requested by USF & G and deny without prejudice Angus's motion for partial sum-

mary judgment dismissing USF & G's contract defenses to coverage.

USF & G bases its prematurity argument supporting its request for a continuance on the premise that it was understood at the March 19, 2004 pre-motion conference between the parties and the Court that the motions would be limited to the issue of the duty to defend. (Pl. Surreply Mem. Opp. Summ. J. at 5–6.) Indeed, this position accords with the Court's own recollection as refreshed by its contemporaneous notes, which also state that the discovery cut-off and next pretrial conference are both set for September 24, 2004. Nevertheless, a miscommunication has occurred, as Angus's motion for partial summary judgment goes beyond the duty-to-defend issue and calls for the dismissal of USF & G's contract defenses.[12] (Angus Mem. Supp. Summ. J. at 7–8.)

 Under Fed. R. Civ. P. 56(f), a party who wishes to "postpone consideration of a motion for summary judgment and to obtain additional discovery" must submit an affidavit "describing: (i) the information sought and how it will be ob-

10. In the Declaratory Judgment Complaint, USF & G alleges that various FBI officers and agents made material omissions of fact that affected the underwriting process when, in procuring the Policy, it described itself as a "new business" and did not reveal pending intellectual property litigation involving the same product against related businesses who already had been enjoined from further manufacture, distribution and sale. (Decl. J. Complt. ¶¶ 40–48.) USF & G alleged that it would not have issued the Policy to FBI had the earlier litigation been disclosed. (*Id.* ¶¶ 42, 48.) USF & G also alleged that FBI breached the Policy's requirement that the insured give USF & G, as a condition precedent to coverage, written notice of claims or lawsuits "as soon as practicable." (*Id.* ¶¶ 52–62.)

11. Fed. R. Civ. P. 56(f) provides:
Should it appear from the affidavits of a party opposing the motion that the party

cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

12. Angus's motion is supported by his Declaration, which contains only conclusory denials that neither he nor any other FBI agents or employees ever made false written or oral statements to induce the issuance of the Policy. (Angus Decl. ¶¶ 8–10.) With respect to Victor Bauer, it states that Bauer was never an officer, employee or agent authorized to speak on behalf of FBI. (*Id.* ¶¶ 6–7.) As we have already discussed *supra* note 7, such conclusory and self-serving averments are insufficient support for a motion for summary judgment.

tained; (ii) how it is reasonably expected to raise a genuine issue of material fact; (iii) prior efforts to obtain the information; and (iv) why those efforts were unsuccessful." *Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139, 167 (2d Cir.2003) (discussing *Sage Realty Corp. v. Ins. Co. of N. Am.,* 34 F.3d 124, 128 (2d Cir.1994)), *cert. granted on other grounds,* —— U.S. ——, 124 S.Ct. 2904, —— L.Ed.2d —— (2004) (No. 03–855). Whether to grant a Rule 56(f) motion is a matter committed to this Court's discretion. *Oneida Indian Nation,* 337 F.3d at 167–68. Our primary inquiry in reviewing a Rule 56(f) affidavit is whether a party has had "a sufficient opportunity to develop and contest the issues on which it now claims to need additional discovery." *Id.* at 168; *see Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.,* 100 F.Supp.2d 178, 184–85 (S.D.N.Y. 2000) (granting Rule 56(f) application and denying the defendant's motion for summary judgment in a motive-dependent case of fraudulent concealment when documents had been exchanged, but needed depositions, including one of the defendant's corporate representative, had not yet been taken); *see also Moss v. Enlarged City Sch. Dist. of City of Amsterdam,* 166 F.Supp.2d 668, 671–72 (N.D.N.Y.2001) (denying the plaintiff's motion for summary judgment without prejudice and granting the defendant's Rule 56(f) application when the defendant did not have the opportunity to depose the plaintiff as a result of the plaintiff's "stalling"). Moreover, even if the Rule 56(f) affidavit does not precisely conform to the *Sage Realty* requirements, it is preferable to err on the side of permitting further discovery, especially if the proceedings are still in a preliminary stage. *Estate of Lennon v. Screen Creations, Ltd.,* 939 F.Supp. 287, 293 (S.D.N.Y.1996); *accord Ruotolo v. Dep't of Justice, Tax Div.,* 53 F.3d 4, 11 (2d Cir. 1995) (noting that even when the Freedom of Information Act plaintiffs had "clearly . . . justified their opposition to the motion for summary judgment," "the better course would have been to grant the adjournment sought by the [plaintiffs] for further discovery in aid of their opposition to the summary judgment motion"); *Casper v. Wesco Distrib., Inc.,* 208 F.R.D. 45, 47 (W.D.N.Y.2002) (denying the defendant's motion for partial summary judgment filed one month before the discovery cut-off and granting the plaintiff's motion to compel discovery, stating that "while not specifically designed as an affidavit pursuant to Rule 56(f), plaintiff's counsel's affidavit submitted in support of the motion to compel nonetheless satisfies the requirements of that rule"). Nevertheless, we need not grant the application if the material requested pursuant to Rule 56(f) is immaterial, speculative or cumulative. *See, e.g., Mahl Bros. Oil Co. v. St. Paul Fire & Marine Ins. Co.,* 307 F.Supp.2d 474, 489–90 (W.D.N.Y.2004).

 The Surreply Affidavit submitted by USF & G satisfies the basic Rule 56(f) requirements set forth in *Oneida Indian Nation,* 337 F.3d at 167, and *Sage Realty,* 34 F.3d at 128. The Surreply Affidavit states that USF & G requires depositions of, at minimum, Angus, Mosey, Bauer and Howard Siskin, the agent who procured the coverage at issue.[13] (Surreply Aff.

---

**13.** The Surreply Affidavit also states that depositions of other "Frosty Bites Distribution" officers and/or employees may also be necessary. (Surreply Aff. ¶ 4.) In Angus's own Surreply, he calls this a "deliberate" failure to distinguish between Frosty Bites Distribution and its owner Bauer, whose claims have been settled, and FBI and Angus. (Angus Surreply

Mem. Supp. Summ. J. at 6–7.) Given the muddled business lineage of the various Frosty Bites entities and the frequent participation of many of the same individuals in their operations, a confusing situation not clarified in the slightest by the voluminous array of opening, responsive, reply and surreply memoranda filed by the parties on this

¶ 4.) USF & G states that it expects these depositions to raise a genuine issue of material fact with respect to alleged omissions and misrepresentations by the insured parties during the underwriting and claims investigation processes. (*Id.* ¶¶ 5, 6.) USF & G has thus far utilized document requests and interrogatories to obtain this information, but it admits that "[t]hese early discovery devices have not elicited, nor were they intended to elicit without the conduct of depositions, proof definitively supporting the defenses." (*Id.* ¶ 7.) Finally, USF & G notes that discovery is not complete, and that the agreed-upon discovery cut-off deadline is in September 2004. (*Id.* ¶ 8.)

Considering the timing of the summary judgment motion, and the heavily fact-intensive nature of USF & G's contract defenses to coverage,[14] we conclude that it would be an abuse of discretion to deny its request for a continuance for further discovery.[15] We therefore deny without prejudice Angus's motion for partial summary judgment dismissing USF & G's contract defenses.

motion, we give USF & G's counsel the benefit of the doubt as to her need for further discovery.

**14.** The timeliness of an insured's notice of claim for insurance benefits pursuant to a policy's "as soon as practicable" standard is a fact-intensive inquiry. *See, e.g., Banks v. Am. Mfrs. Mut. Ins. Co.,* 306 A.D.2d 120, 122, 762 N.Y.S.2d 588 (1st Dep't 2003). Moreover, misrepresentations, and the materiality thereof, also typically present fact-intensive inquiries under New York law, although materiality may be established as a matter of law through the submission of underwriting policy manuals and testimonial evidence showing that the policy would not have issued but for the misrepresentation. *See, e.g., Courtney v. Nationwide Mut. Fire Ins. Co.,* 179 F.Supp.2d 8, 11 (N.D.N.Y.2001), *aff'd without opinion,* 23 Fed.Appx. 91 (2d Cir.2002); N.Y. INS. LAW § 3105(b).

## CONCLUSION

For all of the foregoing reasons, we grant Nicholas Angus's motion for partial summary judgment declaring that the United States Fidelity and Guaranty Company ("USF & G") is required to defend it in the action now pending in the United States District Court for the Northern District of Georgia and deny as moot USF & G's motion for partial summary judgment. We grant the continuance requested by USF & G and deny without prejudice Angus's motion for partial summary judgment dismissing USF & G's material misrepresentation and late-notice defenses to coverage. This Court's pre-motion conference rule will be strictly enforced with respect to any motions for reconsideration.

SO ORDERED.

**15.** In support of his motion for summary judgment, Angus relies heavily on the line of cases standing for the well established proposition that under New York law, an applicant for insurance ordinarily has no duty to volunteer facts not inquired about by the insurer. *Vella v. Equitable Life Assurance Soc'y,* 887 F.2d 388, 393 (2d Cir.1989); *see also Berger v. Manhattan Life Ins. Co.,* 805 F.Supp. 1097, 1104 (S.D.N.Y.1992) ("An insured has no obligation to volunteer information which is not directly asked for by the insurance company, nor can the answer to an ambiguous question be the basis for a claim of misrepresentation against the insured."). (Angus Surreply Mem. Supp. Summ. J. at 8.) These cases are, however, of minimal guidance at this point because the factual circumstances surrounding the relevant insurance application and underwriting processes are insufficiently developed.